OHIO VALLEY FLUORSPAR CO., DISSOLVED, GEORGE W. KILLEBREW, JR., TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16832. Promulgated January 27, 1928.

*T. W. Branch, Esq.*, for the petitioner.
*W. H. Lawder, Esq.*, for the respondent.

OPINION.

MORRIS: Since the first and second allegations of error urged by the petitioner grow out of the acquisition of the assets of the Ohio Valley Fluorspar Co. of New York and the sublease of Persons, upon which it contends it is entitled to depletion and depreciation for the entire year 1919, they may be considered and disposed of together.

The Ohio Valley Fluorspar Co. of New York owned a certain lease and other assets upon which the depreciation and depletion deductions herein contended for were computed. Killebrew, who was president of the petitioner upon its organization, and his associates, purchased the stockholdings of one Persons for the sum of $50,000, also a certain sublease owned by Persons for the sum of $5,000. After the beginning of negotiations in this matter, Persons and Killebrew and his associates went to New York and purchased the stockholdings of certain of the New York stockholders of that company. Thereafter Killebrew and his associates made application to dissolve the Ohio Valley Fluorspar Co. of New York, which dissolution does not seem to have been completed until November 28, 1919, when the charter of that company was surrendered. The testimony offered does not disclose when, if ever, either the capital stock which Killebrew and his associates purchased, or the assets of the Ohio Valley Fluorspar Co. of New York or the sublease purchased from Persons became the property of the petitioner.

The respondent has allowed depreciation and depletion for one month in 1919. He contends that the petitioner is not entitled to deductions for depletion and depreciation on the assets in question prior to November 28, 1919, which he has determined was the date when the actual transfer of these assets was made to the petitioner. Since the petitioner has offered no proof that these assets were transferred at any time prior to that date we must sustain the findings of the respondent.

The adjustments referred to in the third allegation of error herein include the depletion and depreciation hereinbefore considered and disposed of. There are, however, three remaining items to be considered, which are:

(a) Salary and traveling expenses of G. W. Killebrew paid by credit on capital stock subscription but not deducted on original return_ $1,900.00

(b) Interest paid and charged to purchase of lease and equipment__ 494.96

(c) Depreciation on frame tenements costing $7,053.41 constructed September 1 to December 31, 1918—useful life considered as 20 years from January 1, 1919_____ 352.67

With respect to the item of $1,900, we do not consider that sufficient evidence has been offered to justify the deduction of that amount in the year 1919. The books of the corporation, which no doubt contain a detailed explanation of this transaction, were not offered in evidence. We have only the witness Killebrew's testimony that the sum of $1,900 was credited to his subscription account on the books of the corporation, and, furthermore, that this was paid to him as salary and traveling expenses in connection with " getting the organization going." We do not know whether this amount represents expenses incident to the acquisition of the assets of the Ohio Valley Fluorspar Co. of New York, and, therefore, organization expenses which should be capitalized, or whether it represents deductible expenses within the meaning of the Act. For failure to adduce sufficient evidence as to the nature of this transaction we must deny the contention of the petitioner.

We have no evidence whatsoever in support of the item of $494.96, and we deny the petitioner's contentions with respect to that item also.

With respect to the item of depreciation on frame tenements, the testimony discloses that in the summer and fall of 1918, prior to incorporation, several buildings were erected to accommodate employees. When asked the nature of the construction of these buildings, the witness replied, " We built these houses out of the best materials we could get, but in those days it was hard to get any kind of material to build with." The witness testified that they were of wood construction covered with paper roofing, and when asked

how long he considered the houses would last, he replied, "I built them for five years, but they may be there yet. I don't know. I am sure they had to be recovered in the meantime." The testimony regarding the nature of construction and the probable life of these structures, is, in our opinion, so vague and uncertain that no intelligent basis could be laid for the computation of depreciation. Furthermore, we do not know what depreciation was allowed by the respondent on those buildings. We find in the deficiency notice that depreciation of 2 per cent has been allowed on a building. We do not know whether that is one of the buildings here under consideration or not. We can not, of course, alter or change the determination of the respondent without first knowing what action he has taken. For failure to adduce sufficient evidence as to this item we must sustain the findings of the respondent.

*Judgment will be entered for the respondent.*